UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DARRYL COOPER,

        Plaintiff,

v.

MARGARET OULLETTE et al.,

        Defendants.
_____/

Case No. 1:25-cv-311

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]however, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). \

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Unknown Party #1.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Physician Assistant Margaret Oullette, Nurse Hannah Root, and Transportation Employee Unknown Party #1 in their personal capacities. Plaintiff claims that Defendants violated his rights under the Eighth Amendment when they denied him necessary medical treatment.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In his complaint, Plaintiff alleges that in 2022, while confined at the Chippewa Correctional Facility (URF), he was diagnosed with end stage squamous cell carcinoma of his left palatine tonsil. (ECF No. 1, PageID.7.) After several months, Plaintiff was transferred to LCF to be closer to the hospital for monitoring while receiving radiation treatment for the cancer, prescribed medication, and a consultation with a speech therapist. (*Id.*) Once at LCF, Defendant Oullette became Plaintiff's medical provider and Plaintiff began experiencing problems with the implementation of his treatment plan. (*Id.*)

Plaintiff states that at some point, the pain medication for his throat was discontinued due to severe side effects. Plaintiff spoke with Defendant Oullette about obtaining a replacement for the pain medication on numerous occasions, but Defendant Oullette refused. (*Id.*) On May 26, 2023, Plaintiff kited Health Unit Manager (HUM) Mikel, not a defendant, about the situation, but was told that Defendant Oullette did not have to replace the pain medication. (*Id.*, PageID.7–8.) Plaintiff filed a grievance against Defendant Oullette and HUM Mikel asserting that he had been without pain medication since February 14, 2023. (*Id.*, PageID.8.)

Plaintiff states that another pain medication for his throat, lidocaine viscous, was discontinued due to the medicine being on backorder. (*Id.*) On June 30, 2023, Plaintiff told nursing staff to inform Defendant Oullette that he was having pain in his neck, jaw, both feet, and right hand and that he needed to have his pain medication reissued. (*Id.*, PageID.10.) Plaintiff filed a grievance on Defendant Oullette the same day stating that he had been having the pain since March 16, 2023, and that Defendant Oullette had done nothing to help him. (*Id.*) Plaintiff filed a second grievance regarding the denial of his pain medication on July 7, 2023, which was rejected as duplicative. (*Id.*)

4

On July 12, 2023, Plaintiff filed another grievance against Defendant Oullette after speaking to her about not having the medication. (*Id.*, PageID.8.) Plaintiff states that in his grievance he wrote:

> I am in pain and my throat is hurting bad. I kited Mikel to find out how long I will be without it. I am in the choice program and this should not be happening to me because they had ample time to find an alternate drug before it ran out.

(*Id.*) The step one response to Plaintiff's grievance indicated that he had sore throat spray that he could use as needed for throat pain. (*Id.*)

On March 21, 2024, Plaintiff sent a kite to health services asking why he had not been taken to his off-site appointments with the speech therapist. (*Id.*, PageID.11.) Plaintiff asserts that he had missed five appointments. (*Id.*) Plaintiff did not receive a response, so he had a family member call LCF to inquire about the reason. (*Id.*) Plaintiff states that his family member was told that he had not been taken to his appointments because of understaffing. (*Id.*) Plaintiff filed a grievance, which was rejected as vague. (*Id.*) On March 29, 2024, Plaintiff filed another grievance and was told that there was a shortage of transportation officers. The response further stated that although Plaintiff's weekly appointments had been cancelled due to logistics, he would be scheduled to see a speech therapist "very soon." (*Id.*)

Plaintiff alleges that on July 3, 2024, his pain medication was cut in half, although Plaintiff did not discover this until he received requested medical records on July 22, 2024. (*Id.*, PageID.8–9.) Plaintiff asserts that he had been receiving this medication for three years to relieve the constant pain of his throat cancer. (*Id.*, PageID.9.) Plaintiff's grievance on the matter was rejected because Plaintiff had not attempted to resolve the issue with appropriate staff. (*Id.*) Plaintiff sent a kite to HUM Mikel but did not receive a response. (*Id.*)

On July 3, 2024, Defendant Root refused to provide Plaintiff with medical care during a visit and told Plaintiff that she was going to remove the special accommodation issued by his

5

medical provider. (*Id.*, PageID.10.) Plaintiff filed a grievance regarding Defendant Root's refusal to provide him with alcohol pads to sterilize and clean his feeding tube to prevent infection. (*Id.*) After Plaintiff left the exam, Defendant Root spoke to Physician's Assistant Groff, not a defendant, and convinced her to cancel the accommodation for alcohol pads. (*Id.*, PageID.10–11.) Instead, Plaintiff was told to wash the site with warm soapy water. (*Id.*)

On July 20, 2024, Plaintiff's Miralax medication was delayed for two weeks when it had been approved for ninety days. (*Id.*) Plaintiff filed a grievance and the step I response acknowledged the delay and stated that administrative action would be taken. (*Id.*)

Plaintiff asserts that Defendants violated his Eighth Amendment rights when they failed to provide him with necessary medical treatment. Plaintiff seeks damages and declaratory relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced,

7

deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal

8

quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

9

(2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

As noted above, Plaintiff claims that Defendants Oullette and Root are health professionals who ignored his need for pain management in relation to his end stage cancer and that Defendant Root denied him necessary supplies to care for his feeding tube in order to avoid infection. Based on the complaint, it appears that Plaintiff continued to receive some treatment for his condition,

but Plaintiff alleges that the deprivation of pain medication that he had been receiving previously resulted in unnecessary suffering. Although true that courts generally do not second guess the judgment of prison medical officials, courts have also recognized:

> [P]rison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Indeed, deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment."

*Id.* (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (citations omitted)). At this stage in the litigation, the Court concludes that Plaintiff's Eighth Amendment claims against Defendants Oullette and Root are not properly dismissed.

With respect to Defendant Unknown Party #1, Plaintiff merely asserts that his off-site appointments for speech therapy were cancelled because of a shortage of transportation officers. Plaintiff fails to allege any facts about Defendant Unknown Party #1 showing that he or she was aware of a substantial risk of serious harm to Plaintiff and acted with deliberate indifference to such a risk. Therefore, the Court concludes that Plaintiff fails to state an Eighth Amendment claim against Defendant Unknown Party #1.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Unknown Party #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C.

§ 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Oullette and Root remain in the case.

An order consistent with this opinion will be entered.

Dated:  May 12, 2025                             /s/ *Maarten Vermaat*
                                                                         Maarten Vermaat
                                                                         United States Magistrate Judge